UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| BRISTOL WEST INSURANCE COMPANY,<br><br>Plaintiff,<br>vs.<br><br>JIMMY L. CLARK and the ESTATE OF TANYA CLARK,<br><br>Defendants. | Case No: 4:09-cv-0059-SEB-WGH |

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS/TRANSFER

This case is a declaratory judgment action brought by Bristol West Insurance Company ("Bristol West") against Jimmy L. Clark, Jr. and the Estate of Tanya Clark (collectively "Clark"). Defendants filed a Motion to Dismiss (Docket No. 44), on August 30, 2011, pursuant to Rule 12(b), F.R.Civ.P., seeking dismissal of this case for lack of personal jurisdiction based on the insurance company's alleged failure to make proper service of process on the Defendants. Defendants have also advanced a variety of alternative grounds for dismissal. For the reasons set forth below, Defendant's motion is **DENIED**.

## Factual Background

This case arose from an automobile accident which occurred on May 12, 2008, in Somerset, Pulaski County, Kentucky, involving residents of Kentucky, one of whom was Tanya Clark. Sadly and tragically, Ms. Clark, then the wife of Defendant Jimmy Clark, died as a result of injuries she sustained in that accident. At the time of the accident, Tanya Clark's automobile, a 2003 Pontiac Grand Am, was covered by an Indiana personal auto liability policy (policy number G00143688504, a copy of which is attached as Exhibit A to the Complaint) that had been issued by Bristol West through its agent, the Jim Dale Insurance Agency ("Dale"), located in Peru, Indiana. At the time of the accident, Mr. Clark was residing in Kentucky where he remained for approximately six months until he moved to Indiana. Mr. Clark seeks remuneration for the losses resulting from the accident both for himself, personally, and as administrator of his wife's estate. His claims have generated some payouts under the available insurance policies, including the Kentucky Workers Compensation benefits, but the amounts paid to Mr. Clark have fallen short of full compensation for his and the estate's damages. One of his claims was to Bristol West based on coverage in its policy of insurance on Tanya Clark's care providing for underinsured motorist benefits, but Bristol West has denied that it has any duty to pay such benefits under that policy.

On May 4, 2009, faced with this impasse, Bristol West filed the complaint in the case before us seeking declaratory relief. Bristol West avers that it is an Ohio corporation

authorized to do business in Indiana and that Clark was at the time of the filing of the complaint a resident of Indiana, thus establishing diversity of citizenship, and the amount in controversy exceeds $75,000.[1]  The Complaint further avers that an actual dispute and controversy exists between the parties as to the extent and/or availability of coverage under the policy and as to whether Indiana substantive law or Kentucky substantive law applies in resolving those issues.

Upon the filing of the Complaint on May 4, 2009, Bristol West undertook to obtain service of process on the Defendants.  On May 26, 2009, Adams acknowledged in a letter to Bristol West that it had received a copy of the Complaint, but that the Complaint had been improperly served on Jimmy Clark, Sr., rather than Jimmy Clark, Jr.  Adams nonetheless requested an additional twenty days within which to respond to the Complaint, to which counsel for Bristol West agreed.  Adams also promised to check with his client to see if he would authorize Adams to receive process on his behalf, opining that "a dec action does seem appropriate in this case."  (Exhibit B)

On September 9, 2009, a paralegal in the law firm representing Bristol West, contacted Adams to secure a current address of Jimmy Clark, Jr., and was informed that

---

[1] The challenged policy provision sets the underinsured motorist limits for recovery at $50,000.  Ordinarily, that would signal on its face that the amount in controversy requirement for diversity jurisdiction ($75,000) has not been satisfied.  For reasons not at all clear to the court at this juncture, the parties appear to agree that the amount in controversy does exceed that limit based on Defendants' claim that it is actually entitled to recover $150,000 (that is, three times the policy limits ostensibly because three separate vehicles were insured under the policy, assuming that Kentucky law controls the resolution of the issues raised here).  The sufficiency of the amount in controversy has not been briefed by the parties, preventing the Court from ruling on the matter.  So, for now, we accept the parties' stipulation that that requirement has been met.

he was residing at 1103 Trails End Drive, Somerset, Kentucky. (Exhibit D) Adams also reported that he would be filing an appearance in this case. Based on the address information provided by Adams, Bristol West sent a certified mailing to that address to effect service of process, but the letter came back as undeliverable.

Beginning in October 2009, numerous communications ensued between the insurance company and Mr. Adams as Bristol West continued its efforts to proceed with this litigation. Despite Mr. Adams's statements to Bristol West that he was, in fact, representing Mr. Clark and, further, that he intended to file his own tort action on behalf of Mr. Clark and the estate in the Kentucky state court against the driver of the automobile who collided with Tanya in Pulaski County, Kentucky, and might join Bristol West in that action as well to resolve the coverage issues, no such state law tort action was commenced by Mr. Adams. On October 19, 2009, Bristol West filed a motion seeking the Court's authorization to effect service by publication, but that motion was denied in light of the September 8, 2009 (Dkt 12) docket entry showing a return to the order to show cause which reflected that plaintiff had succeeded in effecting personal service by certified mail on May 7, 2009, on the Estate of Tanya Clark, per the receipt signed by "Jimmy Clark, Addressee" at the 584 North 550 E, Peru, Indiana, address. When Bristol West's efforts to serve Jimmy Clark, Jr. personally at the Somerset address continued to be unsuccessful, Bristol West sought an extension of thirty days from the Court to complete service, which request was granted..

These continued difficulties with effecting service of process on Mr. Clark prompted Bristol West to engage a private investigator to assist in tracking down Jimmy Clark's current whereabouts and residence. Towards that end, on or about January 12, 2010, the private investigator telephoned the residence of Mr. Clark's father, Jimmy Clark, Sr., who said that his son, Jimmy Clark, Jr., was out of town for the day but was due back in town that evening and further Mr Clark, Sr. confirmed that his son resided at this address with him. Based on that information, Bristol West made another attempt to serve Defendant via copy service at the father's address located at 584 N. 550 East, Peru, Indiana 46970. (Exhibit H, Notice of Return of Service) The investigator further determined that Clark, Jr. may have been residing at the time at a nearby address in Peru, Indiana, (4546 E. 2nd Street), so Bristol West directed service to him via copy service at that location as well. Jimmy Clark, Jr. has asserted in the motion to dismiss and the accompanying brief that his true address at that time was 466 East Main Street, Peru, Indiana, but the investigator reported to Bristol West that, based on his findings, that assertion was untrue.

These continued uncertainties apparently prompted Bristol West to take one further step in securing service of process on Jimmy Clark, Jr. when it engaged the Miami County (Peru, Indiana) Sheriff to deliver the Complaint and summons to Defendant. Thus, on January 13, 2010, delivery was made by hand delivery of a copy of the Complaint and Summons to the address of Jimmy Clark, Sr. and by mailing another copy to that same address, to wit, 584 N. 550 East, Peru, Indiana 46970. On January 15, 2010,

Notice of Service of Process was filed with the Court, indicating that service on Jimmy Clark had finally been accomplished.

On March 8, 2010, when Defendants failed to respond to the Complaint, Plaintiff sought entry of a default judgment, which the Court docketed on March 10, 2010. Six months later, on September 27, 2010, Plaintiff filed a Motion for Entry of Judgment and served a copy of that motion on Jimmy Clark, Jr. as well as on Clark's attorney, Kevin M. Adams.

On November 5, 2010, Defendants, acting by and through a new attorney, Daniel J. Canon, filed a motion to set aside the default judgment, claiming that they had never received service of process because they believed process had been mistakenly delivered to Defendant's father. Jimmy Clark, Jr. averred by affidavit (Paragraph 5) that he had resided at the 1103 Trail End Drive, Somerset, Kentucky, until "approximately October of 2008, wherein (he) purchased a home located at 466 East Main Street, Peru, Indiana and (he) reside(s) there now." Bristol West responded in opposition to the motion to set aside the default, detailing each action taken by it to get proper service on the defendants. Upon review of the motion to set aside the default judgment, the Court concluded that Defendant's assertion that he never received service of process relative to this litigation seemed "improbable;" but the Court nonetheless would err in favor of permitting the case to be reopened so that a decision on the merits might be possible.

In the meantime, on May 11, 2010, shortly after a default had been entered against

Clark in this case, Mr. Adams filed a reciprocal personal injury action against both Bristol West and other defendants in the Pulaski (Kentucky) Circuit Court, which case still pends. That Complaint alleges <u>inter alia</u> that Bristol West's refusal to pay to Clark and the Estate an amount equal to the limits available under the underinsured motorist provision constitutes a breach of contract and that they are entitled to adequate compensation for their damages.

Defendants Clark and the Estate now seek dismissal of the cause of action before this Court for lack of personal jurisdiction, or, in the alternative, a dismissal or abstention based on principles of comity and forum *non conveniens* in favor of allowing the Kentucky case to proceed to judgment, or that the declaratory judgment action be transferred to the appropriate federal district court in Kentucky.

## Legal Analysis

I.  **Personal Jurisdiction**

Clark contends that this Court is foreclosed from resolving this matter on the merits because we lack personal jurisdiction over him and the Estate due to Bristol West's failure to secure proper service of process. "A district court may not exercise personal jurisdiction over a defendant unless the defendant has been properly served with process." *U.S. v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008) (citation omitted). Service of process is not a mere technicality and the service requirement is not satisfied merely because a defendant has had knowledge of the ongoing litigation. *Mid-Continent Wood Prods., Inc.*

*v. Harris*, 936 F.2d 297, 300-01 (7th Cir. 1991).

Rule 4, F.R.Civ.P, lays out the acceptable methods for service of process, "the preferred approach being for the plaintiff to mail the defendant a copy of the complaint and summons and obtain a waiver of personal service from the defendant under Rule 4(d). But if the defendant does not waive service and if no federal statute otherwise supplies a method for service process, then Rule 4(e)'s list of methods is exclusive: leaving a copy of the complaint and summons at the defendant's usual place of abode with someone of suitable age and discretion who resides there; ... delivering a coy of the complaint and summons to an agent authorized to accept service;... or any other manner of servicing process permitted by the law of the state where the district court sits...." *Ligas*, 549 F.3d at 501.

Further, it is well-established within the Seventh Circuit that, even if proper service has not been accomplished, the privilege of asserting the defense of improper service "may be waived by formal submission to a cause, or by submission through conduct." *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993). The Supreme Court recently observed that with regard to assertions of specific jurisdiction, "the principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit" to the Court's jurisdiction. *J. McIntyre Mach., Ltd. v. Nicastro*, — U.S. —, 131 S. Ct. 2780, 2788 (June 27, 2011).

We conclude, based on the record before us, that a copy of the complaint and

summons was left at the defendant's "usual place of abode" when it was left at his Somerset, Kentucky address, since that was the address provided to Bristol West's attorneys by Mr. Adams.  Even if that were not "good service", however,  Bristol West's service on Jimmy Clark, Jr. at his father's address at 456 B 2nd Street  in Peru, Indiana, suffices because of the father's confirmation that his son was living at that same address at that time and the father was a person of suitable age and discretion who resided there (Rule 4(e)(2)(B).  This address was confirmed when the private investigator visited that location.  In addition, the Miami County Sheriff also hand delivered a copy of the Complaint and Summons to the door of the Jimmy Clark, Sr.'s address of 584 N. 550 B, Peru, Indiana, as well as mailed service of the Complaint and Summons.  Jimmy Clark, Jr.'s statement under oath in support of his motion to set aside the default judgment that sometime after October of 2008 he purchased a home located at 466 East Main Street, Peru, Indiana, where he lived at the time he executed the affidavit on September 8, 2010, does not refute the fact that he lived with his father at his father's residence on the several occasions when service of process was directed to him.

Even if we were to conclude that proper service had not been effected, it is clear that Defendants' attorney, Mr. Adams, actively engaged in conversations with Bristol West on behalf of his clients regarding this dispute under the insurance policy, even though Adams had not officially entered an appearance in the case.  His discussions with counsel for Bristol West about filing the Kentucky state court tort claim and including Bristol West to get the insurance disagreement before that forum provides a clear

indication that he was acting as Clark's agent with full knowledge of the filing of this action. We are left to wonder why Mr. Adams's representation of Clark and the estate did not continue, but there is no question that in the early stages of this case, when Bristol West was attempting to get service of process on Clark, Jr., that Clark's agent had full knowledge of Bristol West's lawsuit.

More recently, of course, as Bristol West highlights, Clark has actively engaged on numerous occasions in court proceedings relating to a defense of this action as well as in litigating the Kentucky state court action which included a claim against Bristol West for its alleged wrongful withholding of the insurance benefits. While we acknowledge that Clark, Jr. reserved the right to assert his personal jurisdiction claim and have it resolved by the court after the default was set aside, those arguments have now been found unavailing.

## II.    Wilton/Brillhart Doctrine

Defendants also contend in seeking dismissal of the action before us that, even if personal jurisdiction exists, the Court should exercise its discretion and dismiss the case under the *Wilton/Brillhart* abstention doctrine. *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). Under the *Wilton/Brillhart* doctrine, "district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *R.R. Street & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 713 (7th

Cir. 2009). A district court's discretion in this regard arises directly under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, which provides that district courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). In light of the discretionary nature of the powers granted under the Act, the Supreme Court held in *Brillhart* and *Wilton* that "district courts have substantial discretion in deciding whether to declare the rights of litigants and may, in the sound exercise of their discretion, stay or dismiss an action seeking a declaratory judgment in favor of an ongoing state court case." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). In applying this holding, the Seventh Circuit has identified the following factors, which Courts must consider in deciding whether to abstain under *the Wilton/Brillhart* doctrine:

> [W]hether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time.

*Nationwide Ins. v. Zavalis*, 52 F.3d 689, 695 (7th Cir. 1995).

The underlying state action in Kentucky sounds in tort. The case before us is a contract claim. For this court to resolve the contract issues, we need not address or attempt to resolve the tort claims. We conclude on that basis that our going forward to resolve the declaratory action will serve a useful purpose in clarifying the legal

obligations and relationships among the parties and will not become duplicative of that action or constitute piecemeal litigation or otherwise interfere with the tort claim litigation. Obviously, the parties in the two matters are not entirely identical, since the Kentucky action includes additional parties not before us, even though there are some overlaps. Accordingly, we decline to dismiss or to abstain pending the state court decision based on the *Wilton/Brillhart* doctrine.

### III.    Comity and Forum *Non Conveniens*

Clark also seeks dismissal of this declaratory judgment action on grounds of comity, suggesting that deference should be paid by us to the ongoing parallel Kentucky personal injury claim. Comity refers to the principle that courts should accede to or enforce the laws of another jurisdiction, not as a requirement under law, but rather as a courtesy and as a matter of good will. In cases where one court recognizes the law of another, the informing principle is that disruptions to the settled law and the enforcement of legal policies in another jurisdiction should be avoided, if possible.  (Am. Jur. 2d Conflicts of Law § 11 (2012)). Clark reiterates these reasons in requesting that we defer to the Kentucky court:  (1) the fact that the state court has asserted  jurisdiction over the related tort action, (2) the desirability of avoiding piecemeal litigation, (3) the convenience of the state forum to litigants and witnesses, and (4) the fact that the filing of the state tort claim preceded that of the declaratory judgment action. *Bio-Analytical*

*Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450, 454 (7th Cir. 1977) (citing *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800 (1976)).

We can easily resolve the fourth factor, so we will begin with it in this analysis. Clark claims that the federal declaratory judgment action was filed as a "preemptive strike" by Bristol West in an effort to out maneuver Clark. (Def's Brief at 8). Regardless of Bristol West's precise strategy or intentions, the record makes clear the fact that the timing of its lawsuit was substantially in advance of Clark's filing his state tort claim, coming approximately one year prior. There is no evidence of a "race to the courthouse," as he claims. Thus, the case before us is not at all similar to the matter before the court in *Bio-Analytical Services*, where the filing of the state action did in fact precede the federal claim and was a factor that weighed heavily in that decision.

**Forum *Non Conveniens***. The other three factors raised by Clark in seeking a deferral of this claim to the Kentucky court fall within the rubric of a *forum non conveniens* analysis. Clark proposes that we dismiss this action because the Indiana venue is "oppressive and vexatious" to him and his witnesses, analogizing to the facts in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (U.S. 1981) and drawing heavily on the language of that opinion. That case emanated from an airplane crash in Scotland which killed five passengers and the pilot, all of whom were Scottish citizens as were their heirs. The Supreme Court ruled that Scotland was the more convenient forum for resolving that dispute than was a United States court located within the Third Circuit. The Supreme

Court, in deferring to the superiority of Scotland as the appropriate venue for this litigation, cited such factors as the convenience of witnesses' travel to and from the United States to Scotland, the ease of access to evidence, the familiarity of Scottish witnesses to the Scottish topography, and the need to avoid inconsistent verdicts, if possible. We fail to see how the holding in *Piper* applies to the situation before us, particularly in the absence of any facts adduced by Clark that would demonstrate any significant inconvenience to a Defendant who currently resides in Indiana. Further, because the issues before us pertain to the written insurance contract aa opposed to the place where the alleged tort occurred, and because our case is likely to be resolved without requiring witnesses to appear in this forum or a trial to be convened, there is no real inconvenience to prompt either a dismissal or a transfer of this action to the Kentucky court. The Court in making this decision is also informed by the rule that a plaintiff's choice of forum is entitled to deference, absent compelling circumstances which, as a matter of fairness as well as convenience, might justify an override on that choice.

**IV.     Request to Transfer**

In the alternative, Defendants contend that the appropriate venue for resolving this dispute is Kentucky, based on the federal venue statute which is authorizes a court to transfer a case if, to do so, would "prevent the waste 'of time, energy and money' and '... protect litigants, witnesses and the public against unnecessary inconvenience and

expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)(quoting *Cont'l Grain Co. v. Barge F.B.L.–585*, 364 U.S. 19, 26 (1960)). Section § 1404(a) of Title 28, United States Code, provides that "for the convenience of parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer therefore is appropriate where "the moving party establishes that (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell*, 939 F.Supp. 646, 651 (S.D.Ind. 1996). A district court has discretion to adjudicate motions for transfer of venue on a case-by-case basis. *Stewart Organization., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Here, Defendants concede that if we were to transfer this case to Kentucky, it would likely defeat diversity jurisdiction. That may be Defendants' reason for transferring the case, to wit, to have it consolidated with the pending tort claim case in Kentucky state court. But even if venue and jurisdiction could be shown to be proper in either district, Defendants have failed to establish that Kentucky is not just a more convenient forum, but a "clearly more convenient" forum than is this federal district court in Indiana, especially since the division of our court in which this matter is pending is New Albany, which is located directly north of the Indiana-Kentucky border and adjacent to the Ohio River. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). In assessing the convenience of the parties and the witnesses, as noted above, we anticipate

that this declaratory judgment action will be resolved on summary judgment, without necessity of either side calling any witnesses to testify. Similarly, the convenience of the parties is greatest in Indiana, where both are physically located. Thus, it is clear that Defendants' efforts to present compelling reasons to transfer this litigation have come up decidedly lacking.

## Conclusion

For the reasons detailed in this entry, we <u>DENY</u> Defendant's Motion to Dismiss on all grounds.

IT IS SO ORDERED.

Date: _____03/12/2012_____

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Daniel J. Canon
DANIEL J. CANON, P.S.C.
dan@justiceky.com

Thomas Edward Rosta
METZGER ROSTA LLP
Tom@metzgerrosta.com